## 38135.   NEW AMSTERDAM CASUALTY COMPANY
### *et al.* v. FREELAND, Guardian.

DECIDED MAY 16, 1960—REHEARING DENIED JUNE 6, 1960.

*Smith, Oliver, Johnson & Bostick, R. Wilson Smith, Jr.,* for plaintiffs in error.

*William P. Whelchel,* contra.

NICHOLS, Judge. The sole question presented by the appeal is whether or not, under the Workmen's Compensation Act, the natural children of an employee, who has been killed as the result of an injury arising out of and in the course of his employment (where such children are otherwise entitled to compensation as the result of such death), are entitled to compensation where prior to the employee's death such children have been legally adopted by a third person.

In *Sears* v. *Minchew,* 212 *Ga.* 417 (2) (93 S. E. 2d 746), it was held that the adoption laws of Georgia do not divest the right of a child to inherit from its natural father where such child has been legally adopted by a third person before the death of the father. In *Travelers Ins. Co.* v. *Williamson,* 35 *Ga. App.* 214 (132 S. E. 265), which involved a situation where the natural father was killed in a compensable accident after he and the children's mother had been divorced (the mother having remarried), and such children's support was supplied in part by the natural father and in part by the stepfather, it was held that the children were entitled to compensation under the Workmen's

Compensation Act. In *Macon, Dublin, &c. R. Co.* v. *Porter,* 195 *Ga.* 40 (22 S. E. 2d 818), it was held that a child could sue for the negligent homicide of his natural father under Code § 105-1302 although such child had been adopted by an aunt and that in such cases no dependency is required to be shown. See also *Peeler* v. *Central of Georgia Ry. Co.,* 163 *Ga.* 784 (137 S. E. 24).

Under Code § 105-1302 an adopted child may sue for the full value of the life of his natural father; however, such child as next of kin cannot maintain an action against his father's employer for the homicide of his father where such homicide arose out of and in the course of the employment of the father where the employer and the employee are subject to the Workmen's Compensation Act. Code § 114-103; *Wall* v. *J. W. Starr & Sons Lumber Co.,* 68 *Ga. App.* 552 (23 S. E. 2d 452), and citations.

Therefore, since Code § 114-414 (c) provides that the children of the deceased employee who are under 18 years of age are conclusively presumed to be dependent on such deceased employee, and since Code § 114-103, supra, prohibits such child or children from bringing an action for common-law negligence against the employer, which right the child or children would otherwise have, the judgment of the Superior Court of Telfair County in the present case affirming the award of compensation by the full board to the children of the deceased employee, who was admittedly killed as the result of compensable accident, was not error for any reason assigned.

*Judgment affirmed: Gardner, P. J., Townsend and Carlisle, JJ., concur. Bell, J., concurs specially. Felton, C. J., and Frankum, J.; dissent:*

BELL, Judge, concurring specially. While the case of *Macon, Dublin &c. R. Co.* v. *Porter,* 195 *Ga.* 40 (22 S. E. 2d 818) leaves in doubt the decision as to whether a child legally adopted by both an adopting mother and father would be entitled to recover for the homicide of the natural father under Code § 105-1302, this doubt in my opinion has been clearly resolved in the later case of *Sears* v. *Minchew,* 212 *Ga.* 417 (93 S. E. 2d 746), by Chief Justice Duckworth, who in considering the 1949 amend-

ment to the adoption law (Ga. L. 1949, p. 1157), construed the amendment as not being intended to take from the adopted child any rights it already had. In this case Chief Justice Duckworth said: "The language of the Georgia statute, which must be studied for an answer to the other question as to whether an adopted child is divested of his right to inherit from its natural parents, is: 'the parents of the child shall be divested of all legal rights or obligations from them to the child or from the child to them . . .' The language is plain and unambiguous whether or not it expresses the legislative intent at the time this legislation was passed. The subject of the sentence is the word 'parents,' and it refers to the divesting of their legal rights or obligations to the child or from the child. It does not refer to the rights of the child to divest it of anything whatsoever, and the adoption statute being in derogation of the common law, such would be necessary to take from the child any rights of inheritance under the laws of descent and distribution [citing cases].

"It is insisted that the 1949 amendment to the adoption law repealed by implication the right of the child to inherit from its natural parents, since the adoption statute as amended fully replaced the natural parent or parents with the adopting parents, and by such laws the adopted child is deemed to be 'a natural child of petitioner or petitioners' for adoption. This amendment clarified the rights of the child adopted, but it certainly did not intend to take from that child any rights it already had. Nor does the adoption statute fully replace the natural relationship with a new set of parents with all the rights and benefits of the natural parents, since the statute clearly points out that the petitioner or petitioners may never inherit from the child. The argument is also made that the result is that the adopted child would have two sets of parents. Certainly a child would have under this law, natural parents, which he must have to come into this world, and adopted parents, who have been given certain legal rights, although the natural parents would no longer be held legally responsible for the child's care and welfare; but the law cannot abrogate the actual birth and blood relationship between them.

"As stated in the *Lefkoff* case [189 *Ga.* 554, 6 S. E. 2d 687, 133 A. L. R. 738] statutes are not understood to effect a change in the common law beyond that which is clearly indicated by express terms or by necessary implication. There was no express intent to amend the statute of descent and distribution here, and there is certainly no implied amendment taking from children their rights to inherit from the blood."

While this opinion specifically was in reference to the right of a child to inherit from its natural parents under the common-law rights of descent and distribution as codified in the Georgia law, the case clearly enunciated the principle applicable here that the adoption of the amendment of 1949 did not intend to take away from the adoptive child any rights it already had.

Obviously, when this adopted child was born, it possessed the rights granted to it as a child by Code § 105-1302. Applying Chief Justice Duckworth's opinion as to this right, the amendment of 1949 did not take this right away from him. Accordingly, the child was authorized to recover for the wrongful death of its father under Code § 105-1302. By the same analogy the conclusive presumption authorized for the child under Code § 114-414 became available to the child at its birth and would not be taken away from him by the amendment of 1949 to the adoption statutes.

Accordingly, as Judge Nichols points out in the majority opinion, since Code § 114-103 prohibits a child or children from bringing an action for common-law negligence against the employer, which right the child or children would otherwise have, it would have the right to be awarded compensation under the Workmen's Compensation Act where the natural father was admittedly killed as a result of a compensable accident.

FELTON, Chief Judge, dissenting. Code § 114-414 provides that "child" shall include legally adopted children and that "parent" shall include parents by adoption. The compensation law is based on dependency under legal obligation where presumptive dependency is not provided. Under the adoption law (Code, Ann., § 74-414), an adopted child bears the relation of child to the adopting parent and all legal obligations between

the natural parents and the adopted children are destroyed. I cannot believe that under the provisions of the law the General Assembly could have intended that an adopted child would be conclusively presumed to be dependent on his natural father *and* his adoptive father. The very opposite seems to me to be true. *Macon, Dublin &c. R. Co.* v. *Porter*, 195 *Ga.* 40, supra, seems to me to clearly indicate that if in that case there had been an adoptive father the ruling would have been different. This is certainly true in the plain terms of the concurring opinion by Justices Reid and Jenkins. I think the judgment should be reversed.

Judge Frankum concurs in this dissent.